**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ROSALINDA SENDEJAS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of the Social Security Administration<br><br>Defendant. | CAUSE NO. 2:25-CV-00402 |

**OPINION AND ORDER**

Plaintiff Rosalinda Sendejas seeks judicial review of the Social Security Commissioner's decision denying her application for disability insurance benefits. She flags a pair of issues on appeal: first, whether the Administrative Law Judge (ALJ) erred in her evaluation of one of Sendejas's treating physicians; and second, whether the ALJ erred in her assessment of Sendejas's subjective symptoms. After a thorough review of the record, I find no reversible error.

**Background**

Sendejas applied for disability benefits on October 10, 2022, claiming that she was disabled as of July 28, 2022, due primarily to rheumatoid arthritis and obesity. Her claims were denied, and she sought review before an administrative law judge. After a full hearing, the ALJ agreed with the denial. The ALJ determined that Sendejas has severe impairments of inflammatory arthritis and obesity and non-severe impairments

of "an affective and anxiety disorder." [DE 12 at 20.][1] However, the ALJ determined that Sendejas did not meet any of the applicable social security listings for disability. [*Id.* at 21.] In arriving at that conclusion, the ALJ pointed to the state agency consultants who opined that Plaintiff's impairments do not equal any listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. The ALJ found that Plaintiff was no more than mildly limited in her everyday life, and though a particular listing (14.09) "was considered," that the record did not demonstrate a need for a two-handed assistive device. [*Id.* 12 at 21.]

When considering Sendejas's residual functional capacity (RFC), the ALJ determined that Plaintiff is capable of light work as defined in 20 C.F.R. § 404.1567(b), with following specific exceptions: never climbing ladders, ropes, or scaffolds, but occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and/or crawling. [*Id.*] The ALJ also determined that Sendejas can "frequently handle and finger with the bilateral upper extremities." [*Id.*]

At the administrative hearing, the ALJ presented the RFC to a vocational expert (VE) and then asked the VE a series of questions. [*Id.* at 51-56.] In summary, the VE testified that Sendejas would be able to perform the requirements of representative occupations like a stock checker, routing clerk, and marker. [*Id.* at 24-25.] The ALJ determined that Sendejas is capable of working in those occupations, and as a sales attendant, as actually and generally performed. [*Id.*] As a result, the ALJ found that

[1] All citations to specific pages in the administrative record [DE 12] use the bold page number in the lower-right corner of each page.

Sendejas was not disabled within the meaning of the Social Security Act and its regulations. [*Id.* at 26.] Sendejas now seeks review of that decision.

**Discussion**

Let's begin with the standards governing my decision-making. My role is a limited one. I do not review evidence and determine whether Sendejas is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. § 405(g).

Despite its name, "[t]he threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052–53 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). At bottom, my review is guided by the principle that the ALJ "is not required to address every piece of evidence or testimony presented[] but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

That is a modest standard, so the review is a light one. "Social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053 (citations omitted); *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023)

(stating that courts must affirm a decision "even where reasonable minds might disagree about the outcome" if substantial evidence supports the ALJ's disability determination). But of course, "substantial evidence" means more than a "scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, I cannot simply "rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Sendejas finds two main errors in the ALJ's decision. First, she claims that the ALJ failed to consider relevant evidence when evaluating the August 2022 opinion (the "August 2022 Opinion") of Dr. Kris Jenkins, who found severe limitations, and failed to tie her conclusion to the evidence she *did* consider. Second, Sendejas asserts that the ALJ improperly dismissed subjective reports of her symptoms. The Commissioner reads both as thinly-veiled invitations to reweigh the evidence. [DE 20 at 5.] Sendejas counters that they are instead calls for further explanation—requests for the ALJ to show her work. [DE 15 at 7.] I find the ALJ made no reversible error.

**1. Whether the ALJ Erred When Evaluating Dr. Jenkins's Opinion Pursuant to 20 C.F.R. § 404.1520c**

Dr. Jenkins, Plaintiff's treating rheumatologist, completed an arthritis medical opinion on August 25, 2022. [DE 12 at 296-300.] Dr. Jenkins diagnosed Sendejas with seropositive rheumatoid arthritis, giving a "moderate" but "life-long" prognosis. [*Id.* at 296.] When asked to identify "any positive objective signs," Dr. Jenkins identified reduced range of motion in Sendejas's hands, wrist, and elbow; joint deformity;

tenderness; crepitus[2]; reduced grip strength; redness; and swelling. [*Id.*] He did not identify any psychological conditions affecting Plaintiff's physical condition. [*Id.*]

Dr. Jenkins used a form with check boxes to principally describe Sendejas's limitations. [*Id.* at 296-300.] In that form, Dr. Jenkins recommended a series of stark limitations based upon the diagnosis. For example, in a competitive work environment, Dr. Jenkins estimated that Plaintiff could not walk a city block without rest or severe pain; could not sit for more thirty minutes or stand for twenty minutes at a time; could only sit, stand, or walk for less than two hours a day; and could "rarely" lift and carry weights of ten pounds or less. [*Id.* at 296-97.] That said, Dr. Jenkins noted that Plaintiff did not need a cane or other assistive device. [*Id.*] Dr. Jenkins also estimated that Sendejas would need to take a fifteen-minute walk every forty-five minutes. [*Id.* at 298.]

There is something curious about Dr. Jenkins' report. On the one hand, as noted, he claims that Sendejas cannot walk the length of a city block. Yet, on the other hand, he says that in an eight-hour workday Sendejas would need to take *eight walks*, each lasting fifteen minutes. By my math, that's two hours of walking—at least—every workday. But Dr. Jenkins said that Sendejas can only walk for *less* than two hours in an eight-hour workday. [*Id.* at 297-98.] And one would assuredly cover a typical city block within a fifteen-minute walk, unless the pace is slower than one mile per hour. On my view of things, the report suffers from internal inconsistencies. *Prill v. Kijakazi*, 23 F.4th 738, 751

[2] Joint crepitus is "the grating sensation caused by the rubbing together of the dry synovial surfaces of joints." *Dorland's Illustrated Medical Dictionary* at 429 (32d ed. 2012).

(7th Cir. 2022) (finding ALJ entitled to give internally inconsistent doctor's opinion less weight).

Under 20 C.F.R. § 404.1520c, the ALJ was required to articulate how persuasive she found Dr. Jenkins's medical opinion. *See Warnell*, 97 F.4th at 1053 (describing the ALJ's burden as "minimal"). As part of that effort, the ALJ must explain the opinion's "supportability," and "consistency." 20 C.F.R. § 404.1520c. As to supportability, "[t]he more a medical source presents relevant evidence to support a medical opinion, . . . the more weight [an ALJ] will give that medical opinion." *Id.* As to consistency, "the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." *Id.* Here, the ALJ found both elements lacking. Accordingly, the ALJ found Dr. Jenkins's assessment, which placed "severe" limitations on Sendejas, unpersuasive. [DE 12 at 22.]

Sendejas makes a series of arguments to the contrary, but they all revolve around a single theme: that the ALJ did not consider evidence supporting or consistent with the August 2022 Opinion. If she had, the argument goes, the ALJ would have found Dr. Jenkins's opinion more persuasive. From there, Sendejas contends that the ALJ did not build a "logical bridge" connecting the evidence to her conclusion that Dr. Jenkins's opinion was unpersuasive. I am not convinced.

Before addressing the ALJ's supportability and consistency analysis, there is a troubling matter I need to address. Plaintiff's opening brief states that "[o]n September 16, 2021, Ms. Sendejas underwent a consultative examination by Jerald J. Smejkal, M.D., diagnosing her with rheumatoid arthritis and anxiety." [DE 15 at 2.] That's not true. It

seems that Dr. Smejkal died nearly a month before the supposed exam. [DE 12 at 104, 1240.] Indeed, the ALJ raised this issue at Sendejas's administrative hearing. She told the parties that "[t]here is some sort of fraud investigation with two different physicians who were deceased but still had a number of examinations recorded to their name after their death. Nothing to do with the claimant (Ms. Sendejas), but there is an ongoing investigation, so I do need to disregard Exhibit 5F." [*Id.* at 37.] The attorney representing Sendejas at the hearing did not object to the decision to disregard the exhibit. Yet Sendejas's present counsel (a different lawyer than the one who represented Sendejas at the hearing) now affirmatively relies on that very same exhibit as substantive support for an argument that the ALJ failed to "rely[] on all relevant evidence." [*Id.*; DE 15 at 8; *see, e.g.*, DE 15 at 1, 2, 6.] That strikes me as problematic.

In all events, Sendejas essentially challenges how the ALJ assigned weight to each of the medical opinions at issue. Had the ALJ acknowledged certain pieces of evidence, Sendejas claims Dr. Jenkins's opinion would have appeared better supported and more consistent with the record as a whole. Accordingly, it would have received greater persuasive weight, which may have tipped the balance in Sendejas's favor. *See* 20 C.F.R. § 416.920c(c). "Instead," Sendejas claims, "the ALJ concluded the normal findings in the record undermined Dr. Jenkins's opinion without articulating how she weighed any particular finding or record." [DE 15 at 7.]

Sendejas provides some examples that the ALJ supposedly ignored or failed to grapple with. She identifies findings "showing limited range of motion, tenderness, and deformities," by Dr. Jenkins and other abnormal findings like "tenderness in her wrists,

hands, arms, knees, and feet, along with limited ranges of motion in her wrists" made by Dr. Siddiqui. [*Id.* at 6-7 (citing DE 12 at 1243, 1297, 1299, 1302-03, 1390, 1458, 1477, 1503, 1531, 1605, 1696-97).] But those examples do not help her much. *See Robert W. v. Bisignano*, No. 23-CV-1408, 2025 WL 2650289, at *3 (N.D. Ill. Sept. 5, 2025).

To begin, the "ALJ need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (cleaned up). And here, the ALJ clearly considered the underlying issues. [*See, e.g.*, DE 12 at 22-23 (noting "appreciable" hand changes and deformities, among other symptoms and findings, as well as range of motion and tenderness issues and improvement thereof).] The ALJ cited every exhibit Sendejas raised above. *See Yokosh v. Bisignano*, 170 F.4th 631, 639 (7th Cir. 2026) (finding no error where ALJ "referred and cited to [an evaluation] containing the" allegedly omitted evidence). The ALJ grappled with the evidence within them, too, acknowledging Sendejas's legitimate impairments alongside contrary findings. [*E.g.*, DE 12 at 23 ("Imagery confirmed degenerative arthritic changes from her long-term inflammatory condition, but with ongoing medication adjustments, Dr. Jenkins found few abnormalities or limitations").]

Sendejas makes a similar argument relating to the function reports. She claims that the ALJ failed to identify which activities detailed in the reports contradicted Dr. Jenkins's opinion. The ALJ's determination is not a model of clarity, but context makes it intelligible on these points. The ALJ wrote that the August 2022 Opinion was unpersuasive because, among other reasons, "the function reports confirmed a greater

functionality." [*Id.* at 22 (citing DE 12 at 278-86).] For example, Dr. Jenkins opined that Sendejas could not walk a city block without stopping for rest, but Sendejas said the opposite. [*Id.* at 283, 297]; *see Sheila S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-854-MGG, 2022 WL 3443829, at *4 (N.D. Ind. Aug. 16, 2022). Dr. Jenkins further asserted that Sendejas could not sit for more than thirty minutes or stand for more than twenty minutes at a time, totaling less than two hours throughout a normal workday, but Sendejas did not report such strict cumulative limits and reported activity that one could find inconsistent with the need to change positions so frequently [*See* DE 12 at 281-83.] While one may not find these particular examples especially compelling, they are understandable, and the ALJ provided other, independently sufficient reasons—discussed below and throughout her determination—to discount the August 2022 Opinion. *See Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016); *Liapis v. Bisignano*, 180 F.4th 946, 953 (7th Cir. 2026).

Put simply, the ALJ did not cherry-pick evidence. *Colleen A. v. Bisignano*, No. 24-CV-04601, 2025 WL 2785381, at *6 (N.D. Ill. Sept. 30, 2025) (citing *Bakke*, 62 F.4th at 1068). Indeed, the ALJ expressly included RFC limitations based on the very evidence she supposedly ignored. [*See, e.g.*, DE 12 at 24 ("The claimant was tender at times, and she had appreciable subtle hand changes, for which frequent residual functional capacity limitations were included . . . [.]").] To the extent the ALJ failed to cite certain pages in the record, she did not err; "the omitted evidence . . . d[oes] not reveal any substantially different information about" Sendejas's health "than d[oes] the evidence" directly

addressed. *Deborah M.*, 994 F.3d at 789; *e.g.*, *Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019).

The ALJ did not err when finding Dr. Jenkins's August 2022 Opinion unpersuasive. Viewed holistically, the ALJ's determination builds a bridge from the evidence to her well-supported conclusion. At the outset, the ALJ noticed that the August 2022 Opinion placed "severe" limitations on Sendejas despite "rather unremarkable findings" during exam. [DE 12 at 22.] That is a major supportability concern, and it is certainly reason to discount an opinion—especially when that opinion is inconsistent with itself, Sendejas's function report, and other medical evidence in the record. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Rogers v. Saul*, No. 3:20-CV-283-PPS, 2021 WL 1783317, at *4 (N.D. Ind. May 5, 2021); *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *6 (N.D. Ill. Aug. 11, 2022) (finding ALJ properly evaluated opinion that was inconsistent with prior and subsequent examination findings and other physicians' opinions); *see Bakke*, 62 F.4th at 1068. The ALJ then compared Dr. Jenkins's August 2022 Opinion to subsequent ones; notably, in late 2023, aside from the aforementioned deformities, "Dr. Jenkins documented no limitations consistent with the opinion completed in August 2022." [DE 12 at 23.]

The August 2022 Opinion conflicted with medical evidence involving other doctors, too. Other doctors found Plaintiff had an unimpaired gait, intact gross and fine manipulative abilities, and uninhibited mobility, among other positive traits. [*Id.* (citing DE 12 at 1320-21).] Sendejas herself reported intact manipulative abilities "*despite* some wrist edema and hand tenderness." [*Id.* (emphasis added).] Sendejas even told Dr.

Hazel that she could "walk without restrictions." [*Id.* at 1321.] That is, the record contained significant evidence that Plaintiffs' impairments were not disabling, at least not to the degree Dr. Jenkins suggested.

Accordingly, the ALJ reasonably determined that Dr. Jenkins's "severe limitations" were unsupported by, and inconsistent with, objective evidence in the record. [*Id.* at 22]; *Prill*, 23 F.4th at 751-52; *Michelle M. L.*, 2022 WL 3297619, at *6. Even if some evidence pointed toward a different outcome, it is clear how the ALJ arrived at that conclusion. That is enough to satisfy 20 C.F.R. § 404.1520c. *Gerardo S. v. Bisignano*, No. 25 C 9800, 2026 WL 2823596, at *7 (N.D. Ill. Sept. 21, 2026); *Stover v. Kijakazi*, No. 2:22-CV-38-RLM, 2023 WL 2300515, at *3 (N.D. Ind. Mar. 1, 2023). To hold otherwise would be nothing more than a re-weighing of the evidence.

Sendejas's remaining arguments do not change the result. She challenges the ALJ's interpretations of (1) "acute distress," (2) the lack of evidence regarding changing body positions, (3) the function reports, and (4) evidence regarding upper extremity strength. I will discuss them briefly.

Some courts have held that ALJs should not independently interpret evidence that a claimant is in "no acute distress," but "a significant number of other courts have ruled that a finding of 'no acute distress' is a relevant factor for an ALJ to consider in a symptom evaluation." *Michelle M. L.*, 2022 WL 3297619, at *12. But even if the ALJ misinterpreted those findings, the ALJ provided other valid reasons to discount Dr. Jenkins's August 2022 Opinion. *Id.*; *see Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as enough of them are . . . [.]").

The same applies to the alleged absence of evidence that Sendejas "constantly changed body positions due to pain." [DE 15 at 9.] That gap betrays a lack of internal supportability, and, in any event, criticizing an ALJ's "improper[] focus[]" on a given factor goes to how she *weighed* the evidence—which is beyond my purview [*Id.* at 10.] Likewise, Plaintiff's response to citing the function reports—that daily-life activities are not comparable to work responsibilities and thus should not discredit the August 2022 Opinion—is also a not-so-subtle request to reweigh the evidence. *See Tokarz v. Bisignano*, No. 22 C 6769, 2026 WL 1194772, at *5 (N.D. Ill. May 1, 2026); *Jacquelyn G. v. Kijakazi*, No. 22 C 5917, 2023 WL 9000545, at *7 (N.D. Ill. Dec. 28, 2023); *Fallon v. Astrue*, No. 3:10-CV-44-WGH-RLY, 2011 WL 304786, at *8 (S.D. Ind. Jan. 26, 2011).

Sendejas also argues that the ALJ rejected the function reports but then relied upon them to support the RFC findings, claiming "an ALJ may not reject evidence and then rely on that very evidence to find that a claimant is not disabled." [DE 15 at 10 (citing DE 12 at 22).] But I don't think that occurred here. First, the ALJ did not expressly refute the function reports on the cited page. [DE 12 at 22.] Second, the ALJ did not rely solely on the function reports to find the August 2022 Opinion unpersuasive. [*Id.* at 22-23.] Third, Plaintiff improperly treats the reports as a monolith when, in reality, they are collections of *pieces* of evidence. Each piece could be consistent (and thus perfectly acceptable to rely upon) or inconsistent with the record. [*See id.* at 22 (finding that "claimant's statements regarding the intensity, persistence, and limiting effects of [her] symptoms are not *entirely* consistent with medical evidence) (emphasis added).] The ALJ relied on statements from the reports about Plaintiff's daily activities,

not her symptoms. Finally, assuming the ALJ did reject the function reports on the cited page, she did not later use them for an "inconsistent purpose" or "almost exclusively" rely upon them, unlike the ALJ in *Buitron*. *Buitron v. Colvin*, No. 2:14-CV-445-PRC, 2016 WL 1056053, at *10, *12 (N.D. Ind. Mar. 17, 2016). Here, ALJ used the function reports for a consistent purpose: demonstrating that alleged limitations—whether proposed by Dr. Jenkins or Sendejas—are not entirely supported by the record.

The final argument is that the ALJ made an improper, independent medical conclusion. Dr. Jenkins suggested that Sendejas can only rarely lift ten pounds. [DE 12 at 298.] The ALJ rejected that opinion, reasoning that Sendejas's upper extremity strength "was within normal limits." [*Id.* at 23-24; *see also id.* at 72-73.] The ALJ continued that that Sendejas's "subtle upper extremity changes fail[ed] to substantiate a mere [twenty percent] upper extremity use." [*Id.* at 23.] It is true that an ALJ cannot "play[] doctor," but I don't think that occurred here. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). Rather, the ALJ rejected Dr. Jenkins's conclusion. The ALJ did not affirmatively find a lack of impairment but rather found that Dr. Jenkins had "failed to explain the *link* between the medical evidence [Dr. Jenkins] listed and the recommended work restrictions." *Bakke*, 62 F.4th at 1068 (emphasis original).

In sum, the ALJ expressly described a finding of "few abnormalities or limitations" as "[c]onsistent" with records from at least two other doctors. [DE 12 at 23.] It is entirely logical for her to find those opinions more persuasive than Dr. Jenkins's August 2022 Opinion, and that decision is supported by substantial evidence.

### 2. Whether the ALJ Erred Assessing Ms. Sendejas's Subjective Allegations Under SSR 16-3p

Sendejas next contends that the ALJ's decision to discredit her symptoms is "patently wrong." [DE 15 at 13.] I disagree.

Under SSR 16-3p, the ALJ must "consider all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." SSR 16-3p. Under the regulation, an ALJ must determine if a claimant suffers a medically determinable impairment that could reasonably produce the type of pain or symptoms alleged. If yes, the ALJ must determine whether objective medical evidence alone substantiates the "intensity, persistence, and limiting effects of pain" alleged. *Gregory B. v. Saul*, No. 2:19CV184, 2020 WL 995828, at *15 (N.D. Ind. Mar. 2, 2020). But when objective evidence alone cannot substantiate the claimant's subjective allegations, the ALJ must consider other evidence in the record. *Id.* That evidence may include the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain; aggravating factors; the "type, dosage, effectiveness, and side effects of any medication" the claimant takes or has taken to ease pain or symptoms; other treatment undergone; and "[o]ther factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms." *Christine R. v. Comm'r of Soc. Sec.*, No. 23-2074, 2024 WL 1173743, at *5 (C.D. Ill. Feb. 5, 2024).

Sendejas is right that an ALJ cannot "discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting

it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). But an ALJ may discount testimony that's inconsistent with the objective evidence. *Jones*, 623 F.3d at 1161. And an ALJ may consider a *lack* of objective evidence in conjunction with those other factors. *Aimee A. v. Berryhill*, No. 18-2098, 2019 WL 13554477, at *3 (C.D. Ill. June 20, 2019), *aff'd sub nom. Apke v. Saul*, 817 F. App'x 252 (7th Cir. 2020). This is a fact-intensive inquiry, so I can overturn a decision to discredit Plaintiff's alleged symptoms "only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (internal quotation marks omitted).

Sendejas contends that the ALJ did not consider the regulation's first, third, fourth, and fifth factors "after finding objective [evidence] alone did not support [Plaintiff's'] allegations." [DE 15 at 13.] But the ALJ considered the relevant factors; she just concluded that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." [DE 12 at 21.] And she was within her rights to do so. *Jones*, 623 F.3d at 1161.

First, she discussed daily activities, finding "no evidence" that Sendejas was "more than mildly limited in . . . activities of daily living." [*Id.* at 21.] Sendejas "was capable of managing her hygiene, completing complex chores, driving, going out alone and moving about her community, using the internet, and shopping." [*Id.* at 20.] Even if "she performed tasks slowly, with breaks and help," and those facts went unmentioned, the ALJ's analysis suffices. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

Second, the ALJ considered Sendejas's medications. She analyzed Plaintiff's response to medication, stating that Dr. Jenkins found "few" limitations "with ongoing

medication adjustments," and she expressly considered medication when analyzing the August 2022 Opinion. [DE 12 at 22-23.] The ALJ also acknowledged use of over-the-counter medications. [*Id.* at 22.] While the ALJ did not name the prescriptions, "no law requires the ALJ to enumerate all the medications" a claimant takes. *Gedatus*, 994 F.3d at 903.

Third, Plaintiff contends that the ALJ "ignored" the statements completed by Christopher Sendejas, her husband. [DE 15 at 16.] That is incorrect. The ALJ expressly contemplated them; she cites them three times. [DE 12 at 20, 22.]

Finally, the ALJ limited Sendejas to "light work in part to account for some [of the] pain" she may have been suffering from even though medical evidence suggested it might not be necessary. [*Id.* at 24.] In sum, the ALJ's symptom analysis is supported by substantial evidence and is not patently wrong. *Gedatus*, 994 F.3d at 903; *see McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *3 (7th Cir. Feb. 8, 2022) (holding it was not "patently wrong" to give less weight to the claimant's statements than to statements from the medical accounts); SSR 16-3P ("In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . [.]"); *John J. v. Kijakazi*, No. 20 CV 50118, 2021 WL 3910750, at *2 (N.D. Ill. Sept. 1, 2021).

## Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED on September 29, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT